The next case is Wilson v. Astor. Good morning. May it please the Court, my name is Scott Davis. I'm the attorney representing Ms. Wilson in this Social Security matter. And I will keep track of my time, but I'd like to reserve two minutes for rebuttal, Your Honor. Ms. Wilson's case presents evidence where there are a number of errors that I believe the Judge ALJ made in his determination. This case involves the application of the treating physician rule and the rejection of four treating physicians' opinions. Could you keep your voice up a little bit? You want me to talk louder? Yes. I'm sorry, Your Honor. This involves the treating physician rule and the rejection of four treating physicians' opinions who all opined that Ms. Wilson was unable to work. It also involves the ALJ's error in relying solely on non-examining, non-treating state agency physicians who never had an opportunity to evaluate all the medical evidence or all the records. Could I just clarify, this case is about chronic fatigue syndrome as well as fibromyalgia. Is that right? Did your client have the CFS as one of her diseases? She did, Your Honor. Because why did the ALJ not deal with that issue and just focused on the fibromyalgia? Well, I don't have an explanation for that. I don't believe that the ALJ articulated that in his opinion. As it relates to the chronic fatigue syndromes, most of those symptoms and dialogue in the medical records occurred at the very beginning of the case with Kenneth Lee, who was her infectious disease specialist. And he thought initially that she had a post-viral type chronic fatigue syndrome. And then after she left California and then moved to Arizona and was under Steve Fanto's care, who is a pain specialist, it appears that her symptoms really morphed more into a chronic pain syndrome and more into fibromyalgia. And that appears to be where the symptoms and the complaints and the treatment flowed, you know, in terms of where the medical records. Now, I ask because we have a case, Riddick v. Chater on CFS, which seemed very much on point and indicated with that sort of disease, a fluctuation in activity level was just part of the disease process. Is there evidence in the record that this is the same for your client? That Ms. Wilson's symptoms fluctuated and waxed and waned? Well, there is the ability to sometimes engage in activities and sometimes not. And Riddick says that adverse credibility determination based on being involved in normal or trying to lead a normal life was not an allowable basis. So I'm trying to understand to what extent Riddick is applicable to your client's case here. Riddick is applicable, and I cited it in my opening brief. And it's clear that Ms. Wilson's symptoms did wax and wane and were inconsistent. She testified at the hearing that she was unable to get out of bed due to her symptoms of pain and fatigue two to four days a month. She was able to function for approximately 15 minutes at a time before she would need to take a break. And those are just a couple of examples of how her symptoms really were not consistent. With regard to her medical treatment, one of the reasons that the ALJ rejected the opinions of the treating physicians was that it appeared that she was able to get some pain relief for periods of time. And the ALJ, I believe, misconstrued the record and said that she was able to be pain-free from the treatment. But the record really indicates that she would get relief for two to three weeks as a result of massage or trigger-point injections or some type of therapy, and then the conditions would get worse, and she would not be able to function. Isn't your main point the fact that the ALJ did not credit the four treating physicians that she testified to? The ALJ did not credit the four treating physicians and instead credited the two from the state that never examined her. Your Honor, that is the main argument that I believe applies in Ms. Wilson's case. But to take your question further, not only did the ALJ, in my opinion, commit legal error and not follow Ninth Circuit case law in the Lester case, but he also, by not relying on those opinions, but he also, he didn't rely either on the two Social Security examining psychologists. His opinion was not even based on their opinions. And disregarded the lay opinions. He disregarded the lay opinions, and the reason why he disregarded the lay opinions was similar to the reason why he disregarded the four treating physicians' opinions, was that basically the ALJ found that it appears that the four treating physicians who had treated her over a number of years on countless occasions... Yeah, a year and a half and a year. I'm sorry, Your Honor. A year and a half and a year, as I read the record. Yes, well, when you combine all four of the physicians, it was two to three years. No, I mean, what would we combine them? I think three of them treated for a year and a half, one of them treated for a year. Yes, and the reason why the ALJ rejected their four opinions was because he said that it appeared that the four treating physicians just accepted Ms. Wilson's complaints and didn't really question her veracity. Well, he made an adverse credibility determination, and we would have to, to disagree with that, we would have to find that wasn't supported by the record. Why should we find that? Your Honor, the reason why is because the reasons set forth by the ALJ and the record just are not supported. Some of the things that the ALJ referred to is that she was able to carry on an active lifestyle, and much of the records that he cites, such as she took a, she was able to drive regularly down to Phoenix, for example, which is about a hundred-mile car ride, and he used that as a basis to discredit her. But she, the testimony was that she would go down to Phoenix one to two times a month, her husband would drive, and then the ALJ asked, well, do you go do errands while you're down there? And she testified, no, I don't do errands, I stay in the car while my husband does the errands. But that was translated in a selective review of the evidence, in my opinion, by the ALJ, that she was able to do things on a regular basis. But certainly making a trip that may last a couple of days at most might be regular, but it's not frequent. The other reference by the ALJ, and there's a number of them that he makes in the record, was that she was able to attend to the needs of one of her 11-year-old child. And the actual record that the ALJ referenced said basically that, you know, her day started earlier because she had to get up sooner to get him breakfast. That was really all that the record said. There was no reference at all to she's regularly doing things or she's out and about and she's able to go to activities with a child. And that was an example of just the selective review that occurred in the record with regard to his credibility determination. And the ALJ, in terms of the credibility determination, it's important, I think, for the court to note that, you know, he needed to, because the four treating physicians' opinions were really totally uncontradicted in the record, under the Lester holding, the judge needed to offer clear and convincing evidence. And the ALJ did not do that. And there was, the other issue is there was no affirmative evidence of lingering or exaggerating pain complaints by any of the four treating physicians. The medical experts that evaluated her. So for that reason, the credibility determination, which is a large part of this analysis, is flawed. And, again, what we're asking for is a remand for a determination of benefits. As I believe if you credit, if this court credits the treating physicians' opinions, the testimony, it will lead to a fully favorable decision. Do you want to save your last 20 seconds there? May it please the Court, I'm Jacqueline Forslund. I'm appearing on behalf of the Commissioner. This case hinges upon claimant's credibility. You'll have to speak a good deal louder if you want to reach us. I'm sorry. Maybe I'm a little tall for this. Into the microphone and loud. Whether or not claimant is disabled depends on her credibility in this case. Because as with most fibromyalgia cases, there is no objective evidence that shows she's disabled. There's objective evidence that shows she has fibromyalgia, which the ALJ found was severe and limited her to light work. Well, all of her doctors plus the, all of her treating doctors plus two of the examining ones indicated she was limited in her functioning. And so I had some concerns about the ALJ's credibility determination. When I was trying to parse them through, it was difficult to see that the record really supported them. Like this issue about her trip to Nebraska and whether she had driven for an hour in the morning or not, it seemed hardly enough to hang a whole credibility determination on. Help me understand why the ALJ's credibility determination was correct. The ALJ's credibility determination was really founded largely on three things. Claimant's activities. Your voice is drifting away. The inconsistencies in the record and in her testimony, and also on the efficacy of treatment. Doesn't Rettig just say that the fact that she has some level of activities on good days is just irrelevant? That can't be a basis for an adverse credibility determination? Well, in this case, we can chip away at the ALJ's findings as to claimant's activities. We're not chipping away. We want to know what supports it. What evidence is it that she was not credible? Well, we would expect to see evidence. What's the best evidence that she was not credible? Well, it's really the absence of evidence in the treatment. Give us one example, your best shot. Actually, I have two examples, but I'll give you one. One would basically the treating physicians said this claimant was... Her credibility. What is the best shot at her credibility? Her reason for disability is that she has fatigue and cannot perform sustained work activity. You would expect to see at least one observation in the record by one physician that she appeared to be fatigued. It's her credibility we're talking about, not what the evaluation of the treating physician. That's another subject. What in her testimony shows she's not credible? Inconsistency. What? Inconsistency. For example, she claimed throughout the relevant time period that she had significant memory and concentration problems. However, when she was actually tested, her cognition was tested by psychometric testing. It showed that she had no deficits, and indeed she had above average to superior intellectual functioning. This was a contradiction. Memory problem. Pardon? Memory. She was alleging concentration and memory problems. Didn't they find that? No. Psychometric testing showed that she had no deficits of memory. The ALJ sent her to this testing after the hearing. Now, that's your best example? That's an excellent example, yes. All right. There's also other inconsistencies, which taken together paint a picture of someone who has a tendency to exaggerate her complaints. No one's saying she's and the ALJ didn't say that she was intentionally pretending to be disabled. There may be a psychological component here. I don't know. But, for example, at her hearing, at the beginning of the hearing, she testified that she only drove short distances, but when she was questioned around Cottonwood, Arizona, around the local vicinity. But then when she was questioned by the ALJ, it was clear she had driven at least partway to Nebraska, and the record showed that she had driven to Phoenix on occasions to see her doctor. She had not driven. She had been driven. Sometimes she had been driven. Sometimes she had done the driving herself. Dr. Mansfield, one of the psychological examiners, said she had driven, and he was in Phoenix, she was in Cottonwood, had said she had driven herself to that examination. And also there were inconsistencies. Like she had said she never went shopping. I mean, these seem like small things, but she testified that she never went shopping, yet she told her naturopathic doctor that shopping was her exercise. And when you the ALJ looked at the totality of this evidence and asked to find her a fact, found that this person was exaggerating her complaints. There's no doubt that she has fibromyalgia, and the ALJ found her not credible for this reason. It does hinge on credibility. Another thing, you know, she ---- Tell us why the ALJ did not address chronic fatigue syndrome. Well ---- Isn't that a big gap in his opinion? Dr. Lee was Klayment's first doctor. And he ---- in the record. And he treated Klayment from April of 2001 to July of 2002. He didn't know what was wrong with her. Then finally at the end of his treatment he said, it's probably chronic fatigue syndrome. Klayment's husband retired and she moved to Arizona and she had another physician there, Dr. Fanto. She told Dr. Fanto, I have ---- I was diagnosed with chronic fatigue syndrome, which was not entirely accurate. So he did ---- Well, this doesn't speak in terms of probability. Pardon? It's common for doctors to say it's probable. That's true, but the thing is, after that first visit, chronic fatigue syndrome did not appear as a diagnosis in Dr. Fanto's treatment records. So he did not endorse that diagnosis. He diagnosed her with fibromyalgia. She did testify that she had many bad periods, bad days. It's the lack of medical evidence that doesn't support this. One would expect to see that she had canceled medical appointments. Those are invariably recorded in the treatment notes. Yet she always showed up for her medical appointments. It's just this lack of corroborating evidence in the medical record, which is another reason the ALJ discounted her credibility. Let me move just to another point briefly. Let's assume that we end up disagreeing with you and decide the ALJ's adverse credibility determination wasn't supported. Do we need to send it back, in that case, for a vocational expert, for a Step 5 vocational expert determination? Well, that would be presuming that the residual functional capacity finding wasn't supported by substantial evidence. And in that case, it would be possible. Do you want to explain to us why it was supported? Well, the ALJ based, as recounted by the district court, the ALJ based his residual functional capacity finding on three factors. The state agency physician's opinions, and as found by the district court, this determination is supported by objective medical evidence, which indicates that plaintiff's pain can be controlled by medication and so forth. The RFC determination is further supported by plaintiff's ability to engage in a range of activities, as testified to by plaintiff herself. So the ALJ's decision was based on these three factors. And the ALJ may properly discredit the opinion of even a treating physician, even if it's uncontroverted, if it's based on the claimant's properly rejected subjective conclusions. If he were to be remanded and he were to have a vocational expert there, what would the hypothetical that he would give to the vocational expert? Well, I don't know what his finding of fact would be as to claimant's residual functional capacity. I can't hear you. I don't know what the ALJ's finding of fact would be as to claimant's residual functional capacity. We know pretty much what he believes and what he doesn't believe. I have a hard time seeing structuring a hypothetical that's not based on the four treating physicians. They say this shouldn't work. Well, if the ALJ properly rejects the treating physician's opinion. All right. What would the hypothetical be even if he rejected the four treating physicians? It would be that she could perform light work, which is lifting a maximum of 20 pounds. Based on what? Well, that RFC appears in the record. It's the state agency physician's residual functional capacity finding. So that would be the hypothetical would be those things that would be given from the non-examining state physicians, right? That's correct, but there were other factors that went into the ALJ's RFC finding, Your Honor. It sounds like it collapses just into an adverse credibility finding. I mean, he found her not credible, and so therefore all of the physicians that relied on her statements could be discounted because they were relying on a non-credible person. So, I mean, if we don't agree with the adverse credibility determination, it seems like the RFC finding also collapses. You are correct. This does hinge on the ALJ's credibility findings. Thank you. Thank you very much. And we would like to submit the ALJ's findings were based on proper legal standards and substantial evidence. What was that? We would submit that the ALJ's findings were based on proper legal standards and substantial evidence. Thank you, Your Honor. Thank you. I have a couple of quick points on review. The items that were referenced by Ms. Forslund with regard to credibility has to meet the clear and convincing standard, and so that's the question that I would ask this Court to ask itself. Were the reasons that she just proffered and that the ALJ proffered clear and convincing? With regard to the credibility determination, it's critical that there was no linkage by the judge to her ability to perform work, and that's a critical determination. So it's not just enough to say I don't find her credible. The judge under the Gonzalez and Wainwright cases has to link those findings to the ability to work, and the judge never did that anywhere in his decision. What was your response to the example she gave of the Wilson claiming memory problems, and yet she had no cognitive problems? Your Honor, the test results that occurred found that intellectually she was in the high average level. So the cognitive issues didn't appear to be as big of an issue or a concern by either of the state-examining doctors, but it is interesting to note that Dr. Lee, who evaluated her after the hearing, she had made essentially the same finding, that cognitively she appears to be intact. But Dr. Lee then went on to say that the reason why Ms. Wilson is depressed and appears depressed is that she's lost her job. She's lost her ability to work, and she doesn't appear to be able to process that information properly, and that's why I think that's going to affect her and her ability to basically work through her issues and why the depression is a problem. Was there an inconsistency between her saying she had memory problems and the test saying she did not? I don't believe that there was an inconsistency, Your Honor. I think that oftentimes, to answer your question, no, I don't believe so. Your answer is what? I don't believe there were. Did you have another? Yeah. Why shouldn't we remand it, if we agree with you, remand it to the ALJ to make a determination as to whether she's able to perform other work with the help of a vocational expert? Thank you, Your Honor. You actually raised, I think, a salient point, which is what would the hypothetical look like by the ALJ on a remand? And the hypothetical that Ms. Forslund offered was basically that she could do light work based on the state agency physician's opinions. Under the Andrews case, that's not substantial evidence. That hypothetical that she just offered would not support a denial of benefits. So the reason why I don't believe that a remand is appropriate is because if this court credits the four treating physician's opinions that are all clearly less than sedentary work, and if the court credits her testimony and her credibility, again, based on the flawed credibility determination by the judge, there is no reason to remand for payment of benefits. If this evidence is credited as true, then she's entitled to benefits. There's no need for any further administrative proceedings. Thank you. Thank you. Okay, this case is submitted.
judges: Hug, Noonan, Ikuta